UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

JASON PARKS,

                Petitioner,                Case No. 2:16-cv-11702
                                                                Hon. Paul D. Borman
v.

TONY TRIERWEILER,[1]

                Respondent.
_____/

**OPINION AND ORDER (1) DENYING PETITION FOR WRIT OF HABEAS CORPUS, (2) DENYING CERTIFICATE OF APPEALABILITY, AND (3) DENYING PERMISSION TO FILE APPEAL IN FORMA PAUPERIS**

This is a habeas case filed by a Michigan prisoner under 28 U.S.C. § 2254. Petitioner Jason Parks was convicted after a jury trial in the Oakland County Circuit Court of armed robbery, MICH. COMP. LAWS § 750.529, and first-degree home invasion. MICH. COMP. LAWS § 750.110a(2). Petitioner was sentenced as a fourth time habitual felony offender to 25 to 60 years for the armed robbery and 15 to 50 years for the home invasion.

The petition raises three claims: (1) Petitioner's double jeopardy rights were violated when he was retried after the prosecutor's misconduct caused his first trial to end

---

[1] Petitioner has been transferred to the Bellamy Creek Correctional Facility, where Tony Trierweiler is the warden. The only proper respondent in a habeas case is the habeas petitioner's custodian, which in the case of an incarcerated habeas petitioner is the warden of the facility where the petitioner is incarcerated. See *Edwards v. Johns*, 450 F. Supp. 2d 755, 757 (E.D. Mich. 2006); See also Rule 2(a), 28 U.S.C. § 2254. Therefore, the Court substitutes Warden Tony Trierweiler in the caption.

in a mistrial, (2) Petitioner's trial was rendered fundamentally unfair by the erroneous introduction of evidence that police responded to his residence on a report of "family trouble" and recovered a machete, and (3) Petitioner was denied the effective assistance of counsel when his attorney failed to ensure a photograph of him taken from the Michigan Department of Corrections website was sufficiently cropped to eliminate any indication of its source.

The Court finds that Petitioner's claims are without merit. Therefore, the petition will be denied. The Court will also deny Petitioner a certificate of appealability, and it will deny him leave to appeal in forma pauperis.

**I. Background**

The charges against Petitioner arose out of an incident occurring in the City of Pontiac on the night of December 10, 2012, when a man armed with a machete forced his way into an occupied residence and stole money from a bedroom.

Petitioner's first trial ended in a mistrial during the testimony of the first witness, Tessa Coulter, who was at the residence during the robbery. Coulter testified that she learned the identity of the perpetrator through members of his family. Dkt. 11-5, 5/20/13 Jury Trial Tr. at 128. The prosecutor asked which members of the family Coulter knew, and she replied that she knew the whole family, but then she added, "[b]esides Jason, cause he was in and out of prison." *Id*. at 129. Coulter also testified that April Duncan, her sister, showed her a photograph of Petitioner from the Michigan Department of Corrections website. *Id*. at 129-30. The prosecutor then directed Coulter, "hang on. Let's

2

move on." *Id*. at 130.

At that point in the proceedings, defense counsel asked to approach the bench, and the jury was sent out of the courtroom. *Id*. at 131. Defense counsel then moved for a mistrial based on Coulter's reference to Petitioner being in and out of prison, and to her testimony that the photo was from the Michigan Department of Corrections website. *Id*. at 131-32. The prosecutor stated that he did not intend to elicit that testimony, and that Coulter "expand[ed] on things." *Id*. at 132.

The trial court found that the prosecutor was not at fault, and the testimony was unexpected. *Id*. at 133. The court also found that the testimony was highly prejudicial and could not be cured by a jury instruction. *Id*. at 132-33. The court granted the motion for a mistrial. *Id*. at 133.

Defense counsel argued that retrial should be precluded under double jeopardy principles because the prejudicial testimony resulted from the misconduct of the prosecutor. *Id*. at 135-36. The trial court found that a retrial was permissible because the prejudicial testimony had not been intentionally presented. *Id.* at 136-37. The trial court explained:

> [T]here was no intentional action on the part of the prosecutor in this matter. I was able to view him when he was questioning the witness and – and view her and her credibility, and I believe these were just voluntary statements, uh, that she made, and the prosecutor had no idea that those statements regarding Defendant's, um, being in prison in the past, I – I don't believe the prosecutor had any idea she was gonna say anything like that. Um, so I find it was innocent and, at worst, maybe possibly negligent, but I – I think it was purely innocent.

3

*Id*. at 137.

At Petitioner's retrial, April Duncan testified that she lived with her two children in a house in the City of Pontiac. Duncan's sister, Coulter, was a frequent overnight guest. Dkt. 11-7, 5/22/13 Jury Trial Tr. at 80. On the evening of December 10, 2012, Coulter was at Duncan's house to babysit. *Id*. at 9, 13. Coulter and the kids were watching television when she heard a knock on the sliding glass door. *Id*. at 9-11. Coulter walked over to the door and saw Petitioner standing outside. *Id*. at 12-14. Duncan's daughter, Merissa Logan, also identified Petitioner as the man who was standing at the window. *Id*. at 106.

Coulter opened the door, and Petitioner asked for April. *Id*. at 13. Coulter said April was not at home. *Id*. Petitioner identified himself as "Eric" and said that Duncan had invited him over. *Id*. at 13, 17. Duncan testified that she knew Petitioner, but she had not invited him to her house. *Id*. at 81, 101-02.

Petitioner then lifted his shirt and grabbed a handle sticking out of his waistband. *Id*. at 15-16. Coulter tried to slide the door closed, but Petitioner pushed it open and came inside the house. *Id*. at 16-17, 53. Petitioner grabbed Coulter's arm and pulled out a machete. *Id*. at 17-23. Petitioner held the machete up to Coulter's chin and told her to give him her money. *Id*. at 16-18, 58. Coulter dropped to the floor. *Id*. at 18.

Petitioner stepped over Coulter and went into April's bedroom. *Id*. at 19. Coulter got up and ran to a neighbor's house for help. *Id*. at 19. Coulter and the neighbor, who armed himself with a gun, went back to the house, but Petitioner was gone. *Id*. at 19-20.

4

Coulter then called 9-1-1. *Id.* at 21.

April Duncan testified that she kept her cash in the nightstand in her bedroom, and it was missing when she returned home. *Id.* at 32-34, 82-84. The nightstand drawer was open. *Id.* at 61.

The next day Deputy Chris Miracle responded to a report of "family trouble" at another house in Pontiac. *Id.* at 74-75. Petitioner's name had been mentioned in the report, but he was not at the residence when Miracle arrived. *Id.* at 75. Miracle found a two-foot long machete on the porch. *Id.* at 75. Coulter identified it as the machete used by Petitioner during the robbery. *Id.* at 23-24.

A day or two after the robbery Coulter received a phone call from her friend, Ashley Smith. *Id.* at 25. Smith told her information about the robbery, and Coulter then relayed that information to Duncan. *Id.* at 25-26. Duncan later showed Coulter a photo of Petitioner, and the photograph was admitted at trial as an exhibit. *Id.* at 27, 84.

Based on this evidence, the jury found Petitioner guilty of the offenses indicated above.

Following sentencing, Petitioner filed a claim of appeal in the Michigan Court of Appeals. His appellate counsel filed a brief on appeal, raising the same three claims he raises in his habeas petition. The Michigan Court of Appeals rejected the claims and affirmed Petitioner's convictions in an unpublished opinion. *People v. Parks*, No. 317191, 2014 WL 6713481 (Mich. Ct. App. Nov. 25, 2014).

Petitioner subsequently filed an application for leave to appeal in the Michigan

Supreme Court, raising the same claims that he raised in the Michigan Court of Appeals. The Michigan Supreme Court denied the application by standard order. *People v. Parks*, 868 N.W.2d 619 (Mich. 2015) (Table).

## II. Standard of Review

28 U.S.C. § 2254(d)(1) curtails a federal court's review of constitutional claims raised by a state prisoner in a habeas action if the claims were adjudicated on the merits by the state courts. Relief is barred under this section unless the state court adjudication was "contrary to" or resulted in an "unreasonable application of" clearly established Supreme Court law.

"A state court's decision is 'contrary to' . . . clearly established law if it 'applies a rule that contradicts the governing law set forth in [Supreme Court cases]' or if it 'confronts a set of facts that are materially indistinguishable from a decision of [the Supreme] Court and nevertheless arrives at a result different from [this] precedent.'" *Mitchell v. Esparza*, 540 U.S. 12, 15-16 (2003) (quoting *Williams v. Taylor*, 529 U.S. 362, 405-06 (2000)).

"[T]he 'unreasonable application' prong of the statute permits a federal habeas court to 'grant the writ if the state court identifies the correct governing legal principle from [the Supreme] Court but unreasonably applies that principle to the facts' of petitioner's case." *Wiggins v. Smith*, 539 U.S. 510, 520 (2003) (quoting *Williams*, 529 U.S. at 413).

"A state court's determination that a claim lacks merit precludes federal habeas

relief so long as 'fairminded jurists could disagree' on the correctness of the state court's decision." *Harrington v. Richter*, 562 U.S. 86, 101 (2011) (quoting *Yarborough v. Alvarado*, 541 U.S. 652, 664 (2004)). "Section 2254(d) reflects the view that habeas corpus is a guard against extreme malfunctions in the state criminal justice systems, not a substitute for ordinary error correction through appeal. . . . As a condition for obtaining habeas corpus from a federal court, a state prisoner must show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Harrington*, 562 U.S. at 103 (internal quotation marks and citation omitted).

### III. Analysis

A. Double Jeopardy

Petitioner's first claim asserts that his retrial was barred by the Double Jeopardy Clause of the Fifth Amendment because the deliberate misconduct of the prosecutor caused his first trial to end in a mistrial.

The Double Jeopardy Clause, which is "applicable to the States through the Fourteenth Amendment," *Lockhart v. Nelson*, 488 U.S. 33, 38 (1988), states that "[n]o person shall be . . . subject for the same offence to be twice put in jeopardy of life or limb." U.S. Const. amend. V. Jeopardy attaches in a criminal trial once the jury is impaneled and sworn. See, e.g., *Crist v. Bretz*, 437 U.S. 28, 38 (1978). Among other things, the Double Jeopardy Clause protects a defendant's right to have his or her trial

completed by a particular tribunal. *Arizona v. Washington*, 434 U.S. 497, 503-04 (1978).

When a criminal proceeding is terminated prior to a resolution on the merits, retrial before a different jury is not automatically barred. Retrial may proceed if the defendant requests or consents to a mistrial or if there is a "manifest necessity" for the mistrial. *Arizona*, 434 U.S. at 505; *Watkins v. Kassulke*, 90 F.3d 138, 141 (6th Cir. 1996).

An exception to the rule permitting a retrial after a defendant moves or consents to a mistrial applies where governmental action is intended to provoke the defendant to request a mistrial and thereby subject him to the burden imposed by multiple prosecutions. *United States v. Dinitz*, 424 U.S. 600, 611 (1976). In other words, "the circumstances under which . . . a defendant may invoke the bar of double jeopardy in a second effort to try him are limited to those cases in which the conduct giving rise to the successful motion for a mistrial was intended to provoke the defendant into moving for a mistrial." *Oregon v. Kennedy*, 456 U.S. 667, 679 (1982).

Here, after reciting the applicable constitutional standard, the Michigan Court of Appeals rejected Petitioner's first claim on the merits as follows:

> In this case, the trial court properly concluded that the prosecutor did not engage in conduct intended to provoke a mistrial. The prosecutor's line of questioning was designed to show how defendant became a suspect in this case. The victim's statement that she did not know defendant because "he was in and out of prison" was not made in response to any question posed by the prosecutor. And after the victim testified that a picture she saw of defendant was "off of the Michigan Department of Corrections web site," the prosecutor immediately interrupted this non-responsive testimony. Further, there is no evidence of a possible motive to provoke a mistrial on the first day of trial during the examination of the first witness. Under these circumstances, the trial court did not clearly err in finding that the prosecutor did not engage in

8

conduct intended to provoke or 'goad' the mistrial request.

*Parks*, 2014 WL 6713481, at *2.

This decision did not constitute an unreasonable application of the clearly established Supreme Court standard. This is not a case where the trial was going poorly for the prosecution so it sought to scuttle it through deliberate misconduct resulting in a mistrial motion. Rather, the incident occurred during the direct examination of the prosecutor's first witness. After the witness's unsolicited remark about Petitioner being in and out of jail and Petitioner's photograph being taken from the Michigan Department of Corrections website, the prosecutor told the witness to "move on." Dkt. 11-5, at 128. Based on this record, it was objectively reasonable for the Michigan Court of Appeals to find that the prosecutor did not engage in conduct intended to provoke Petitioner into moving for a mistrial. The prejudicial testimony was not deliberately solicited by the prosecutor, nor did he have any reason to provoke a motion for a mistrial. Because the state court reasonably adjudicated this claim, Petitioner has failed to demonstrate entitlement to relief.

B. Admission of Evidence

Petitioner's second claim asserts that his trial was rendered fundamentally unfair by the admission of testimony that officers went to his family's house on a report of "family trouble" and that they found a machete at the house. The claim is not cognizable on federal habeas review.

"Errors by a state court in the admission of evidence are not cognizable in habeas

9

proceedings unless they so perniciously affect the prosecution of a criminal case as to deny the defendant the fundamental right to a fair trial." *Biros v. Bagley*, 422 F.3d 379, 391 (6th Cir. 2006). Typically, "to show a due-process violation under AEDPA rooted in an evidentiary ruling, there must be a Supreme Court case establishing a due-process right with regard to that specific kind of evidence." *Collier v. Lafler*, 419 F. App'x 555, 558 (6th Cir. 2011).

Here, the Michigan Court of Appeals found that the admission of the disputed evidence was proper under state law. With respect to the testimony that police responded to a call based on "family trouble," the Michigan Court of Appeals found that the testimony was properly admitted to explain how the machete was recovered, not to show that Petitioner had an inclination for wrongdoing in general. *Parks*, 2014 WL 6713481, at *2. Coulter testified that she believed the machete recovered from the house was the same weapon he used during the robbery. Dkt. 11-7, 23-24. The testimony regarding how and where the machete was recovered established a foundation to admit it as an exhibit under Michigan Rule of Evidence 901. The machete was a key part of the prosecutor's case in that it supported the armed element of the armed robbery charge.

Petitioner has failed to demonstrate state evidentiary error with respect to the circumstances surrounding the recovery of the machete, let alone a violation of his due process right to a fundamentally fair trial. Nor does his claim rely on a Supreme Court case establishing a due-process right prohibiting admission of the specific kind of evidence at issue. *Collier*, 419 F. App'x at 558. Petitioner is not entitled to relief on his

second claim.

C. Effective Assistance of Counsel

Petitioner's third claim asserts that his counsel was ineffective for failing to ensure that the photograph Duncan showed Coulter to identify Petitioner was sufficiently cropped so that the jury could not deduce that it came from the Michigan Department of Corrections website. The Michigan Court of Appeals reasonably rejected this claim on the merits.

The "clearly established law" for purposes of reviewing ineffective assistance of counsel claims under the AEDPA is *Strickland v. Washington*, 466 U.S. 668 (1984). *Williams v. Taylor*, 529 U.S. 362, 390-91 (2000). The two-pronged *Strickland* test requires a showing of deficient performance and resulting prejudice. *Strickland*, 466 U.S. at 687. A petitioner may show that counsel's performance was deficient by establishing that counsel's performance was "outside the wide range of professionally competent assistance." *Id*. at 689. This "requires a showing that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed by the Sixth Amendment." *Id*. at 687.

Habeas relief may be granted only if the state-court decision unreasonably applied the standard for evaluating ineffective-assistance-of-counsel claims established by *Strickland*. *Knowles v. Mirzayance*, 556 U.S. 111, 122-23 (2009). "The question is not whether a federal court believes the state court's determination under the *Strickland* standard was incorrect but whether that determination was unreasonable - a substantially

higher threshold." *Id*. at 123 (internal quotation omitted).

The Michigan Court of Appeals rejected this claim as follows:

> The victim identified defendant after her sister showed her a picture of him. This picture was admitted as an exhibit at trial. The exhibit was a picture of defendant in front of a cinder block wall with the words "BIOGRAPHICAL INFORMATION" above it and defendant's name below it. The picture was taken from the Michigan Department of Corrections Offender Tracking Information System (OTIS) website, although there is no explicit indication of this on the exhibit.
>
> Defendant first argues that his trial counsel rendered ineffective assistance by failing to move in limine to redact "BIOGRAPHICAL INFORMATION" and defendant's name from the exhibit because it was obvious that the picture was from the Michigan Department of Corrections website and that defendant had a criminal history. We disagree.
>
> To establish an ineffective assistance of counsel claim, the defendant must show that "(1) counsel's performance fell below an objective standard of reasonableness and (2) but for counsel's deficient performance, there is a reasonable probability that the outcome would have been different." *People v. Trakhtenberg*, 493 Mich. 38, 51 (2012). Because defendant failed to preserve this issue, our review is limited to errors apparent on the record. See *People v. Ginther*, 390 Mich. 436 (1973); *People v. Jordan*, 275 Mich. App. 659, 667 (2007).
>
> Defendant does not dispute that the prosecutor was entitled to introduce the picture the victim used to identify defendant as her assailant. Defendant argues, however, that "[h]ad the headings been redacted, the photograph could at best be viewed as a being [sic] taken anywhere." However, even if a knowledgeable juror may have speculated that the photograph was taken from the Michigan Department of Corrections website, redacting the photograph as suggested by defendant would not have eliminated this possibility. Consequently, defendant has failed to establish that his counsel's performance fell below an objective standard of reasonableness and that, but for counsel's deficient performance, there is a reasonable probability that the outcome would have been different. See *Trakhtenberg*, 493 Mich. at 51.

*Parks*, 2014 WL 6713481, at *3.

This decision constituted a reasonable application of the *Strickland* standard. Petitioner attached a copy of his photograph taken from the Michigan Department of Corrections website to his appellate brief filed in the Michigan Court of Appeals. *See* Dkt. 11-10, Appellant's Brief on Appeal, Exhibit B. The uncropped image clearly indicates that it came from the Department's website, shows that he was an inmate, indicates his security level and out-dates, and contains other obviously prejudicial information. In sharp contrast, the cropped version that was admitted as a trial exhibit shows only Petitioner's photograph, his name, and above his picture the heading "Biographical Information" appears. *Id*. Exhibit A.

Contrary to Petitioner's allegations, it would not have been obvious to the jury that the cropped photograph came from the Department of Corrections website. Counsel ensured that the prejudicial information on the full web-page was cropped and not revealed to the jury. The heading "Biographical Information" on its own did not suggest any particular source for the photograph. Based on this record, it was not objectively unreasonable for the Michigan Court of Appeals to find that Petitioner failed to demonstrate either deficient performance of prejudice. The claim is therefore without merit.

As none of Petitioner's claims merit relief, the petition will be denied.

### IV. Certificate of Appealability

Federal Rule of Appellate Procedure 22 provides that an appeal may not proceed unless a certificate of appealability is issued under 28 U.S.C. § 2253. Rule 11 of the Rules

Governing Section 2254 Proceedings, which was amended as of December 1, 2009, requires that a district court must "issue or deny a certificate of appealability when it enters a final order adverse to the applicant. . . . If the court issues a certificate, the court must state the specific issue or issues that satisfy the showing required by 28 U.S.C. § 2253(c)(2)." Rule 11, Rules Governing Section 2254 Proceedings. A certificate of appealability may issue "only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). Courts must either issue a certificate of appealability indicating which issues satisfy the required showing or provide reasons why such a certificate should not issue. 28 U.S.C. § 2253(c)(3); Fed. R. App. P. 22(b); *In re Certificates of Appealability*, 106 F.3d 1306, 1307 (6th Cir. 1997).

To receive a certificate of appealability, "a petitioner must show that reasonable jurists could debate whether (or, for that matter, agree that) the petition should have been resolved in a different manner or that the issues presented were adequate to deserve encouragement to proceed further." *Miller-El v. Cockrell*, 537 U.S. 322, 336 (2003) (internal quotes and citations omitted). Here, jurists of reason would not debate the Court's resolution of Petitioner's claims because they are devoid of merit. Therefore, the Court denies a certificate of appealability.

The Court will also deny Petitioner leave to appeal in forma pauperis because the appeal would be frivolous. *Allen v. Stovall*, 156 F. Supp. 2d 791, 798 (E.D. Mich. 2001).

## V. Order

**IT IS ORDERED** that the petition for a writ of habeas corpus is **DENIED WITH PREJUDICE**.

**IT IS FURTHER ORDERED** That a certificate of appealability is **DENIED**.

**IT IS FURTHER ORDERED** that leave to appeal in forma pauperis is **DENIED**.

s/Paul D. Borman
PAUL D. BORMAN
UNITED STATES DISTRICT JUDGE

Dated: September 7, 2017

CERTIFICATE OF SERVICE

The undersigned certifies that a copy of the foregoing order was served upon each attorney or party of record herein by electronic means or first class U.S. mail on September 7, 2017.

s/Deborah Tofil
Case Manager